UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
98 MAR -3 PM 12:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA HALE, as Personal )
Representative of the Estate )
of Larry Hale, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-97-S-2074-NW
)
FMC CORPORATION, DON SMITH, )
)
    Defendants. )

## MEMORANDUM OPINION

Plaintiff is the widow of Larry Hale, who was a cotton farmer in Lauderdale County, Alabama until 1995, when he was killed in an airplane crash.[1] (Complaint ¶¶ 1, 10.) During the summer of 1995, Hale's cotton crop faced devastation from infestations of boll worms and tobacco bud worms. (*Id.* ¶¶ 4-5.) Defendant FMC Corporation, a Delaware corporation, manufactures pyrethroids marketed under the brand names of "Ammo" and "Fury," for the purpose of "kill[ing] the tobacco bud worm and boll worm, as well as other insects which feed on the various parts of the cotton plant." (*Id.* ¶ 2.) FMC offered a written guarantee regarding the effectiveness of "Ammo" against worm infestations.[2] (*Id.* ¶ 6.) Defendant Don Smith was employed by FMC as its authorized agent in Lauderdale County, Alabama. (*Id.* ¶ 3.) Don Smith allegedly expressly extended the "Ammo" warranty to users of "Fury,"

---

[1] Since Hale's death, his widow and son, Larry Hale, Jr., have continued to operate the cotton farm. (Complaint ¶ 11.)

[2] The precise language of that warranty is not disclosed in the record before the court.

including Larry Hale, during the cotton growing season of 1995. (*Id.* ¶ 7.) Plaintiff alleges that Smith represented that "if a cotton farmer purchased fury or ammo and followed the directions when applying fury and ammo to the cotton crop, FMC would reimburse the farmer for cost of fury and ammo if the worms were not killed or controlled as advertised." (*Id.* ¶¶ 7-8.)

Hale allegedly purchased and applied Fury to his cotton crop in reliance on that warranty in an attempt to thwart the worm infestation. (*Id.* ¶ 9.) The product failed to control the infestation, and Hale's crop was substantially destroyed. (*Id.*)

Plaintiff, acting on behalf of her husband's estate, filed this action in the Circuit Court of Lauderdale County, Alabama, on July 25, 1997, alleging misrepresentation (Count One), breach of express warranty (Count Two), breach of implied warranty (Count Three), and fraudulent suppression (Count Four).[3] Defendants FMC and Don Smith jointly removed the action to this court on August 8, 1997, asserting federal question jurisdiction based upon 28 U.S.C. § 1331 and § 1441, and, diversity jurisdiction based upon 28 U.S.C. § 1332.

Plaintiff filed a motion entitled "Motion to Allow Motion to Remand Due to Lack of Notice" on September 16, 1997, more than 30 days after removal, asserting that she did not receive timely notice of removal. Defendants oppose plaintiff's motion as

---
[3] Count Five of plaintiff's complaint asserts identical claims against "fictitious parties A, B, and C, being those certain persons, firms or corporations whose misrepresentations, fraudulent suppression of necessary information, and breach of express and implied warranties, caused the plaintiff's damage...." (Complaint ¶ 35.)

2

untimely.

Both parties erroneously assume that plaintiff's proposed motion to remand is untimely. 28 U.S.C. § 1447(c) provides in part:

> A motion to remand the case <u>on the basis of any defect other than lack of subject matter jurisdiction</u> must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. [Emphasis supplied.]

Thus, an objection to subject matter jurisdiction may be raised at any time. *Scott v. Kroger Co.*, 982 F. Supp. 419, 421 (N.D. Miss. 1997).

## I. DISCUSSION

Federal courts are courts of limited jurisdiction. *E.g., Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092 (11th Cir. 1994). As such, they have the power to hear only those cases authorized by Congress or by the Constitution. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675 (citation omitted); *see also Burns*, 31 F.3d at 1095 ("in deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court").

3

A.  **Removal Jurisdiction**

Title 28 U.S.C. § 1441(a) permits removal of any action over which "the district courts of the United States have original jurisdiction." Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Defendants contend that this action arises under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136, which regulates the use, sale, and labeling of many chemical substances, including pesticides, herbicides, and insecticides.

The Supreme Court instructs that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987)(citing *Gully v. First National Bank*, 299 U.S. 109, 112-113, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936)). Consequently, the general rule is that removal based solely on assertion of a federal defense, such as pre-emption, is improper. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 ("it is now settled that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue"); *see*

4

also *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court").

There is, however, an exception to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. Complete pre-emption exists when "federal law is so dominant in a particular area, the pre-emptive force of a federal statute so 'extraordinary,' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleading complaint rule.'" *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1144 (8th Cir. 1992)(quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)); *see also Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 ("On occasion, the Court has concluded that the pre-emptive force of a statute" renders an area of state law so completely pre-empted that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim"). The Supreme Court has recognized the existence of complete pre-emption in only three instances: under § 301 of the Labor Management Relations Act[4];

---

[4] *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

under § 1132 of ERISA[5]; and, with regard to certain tribal claims.[6]

A review of FIFRA's pre-emption clause and relevant Supreme Court authority resolves the matter. FIFRA's pre-emption clause, 7 U.S.C. § 136v, reads as follows:

> (a) **In general**
>
> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

It is apparent from the language of subsection (a) that FIFRA does not wholly oust the states from this area of the law. That conclusion is reinforced by subsection (b), providing:

> (b) **Uniformity**
>
> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

The Supreme Court has recognized that such language would be "pure surplusage if Congress had intended to occupy the entire field of pesticide regulation." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 612-13, 111 S.Ct. 2476, 2485-86, 115 L.Ed.2d 532 (1991)(holding that FIFRA's comprehensive regulatory scheme is "not so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it")(citations and internal quotation marks omitted); *accord Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1144-45 (8th Cir. 1992)(Even if Congress intended "to pre-

---

[5] *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987).

[6] *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

empt state authority completely in the area of labelling, packaging, and warning.... [it] does not mean that removal was proper. It means only that there may be a good federal pre-emption defense"); *see also Thigpen v. Cheminova*, 1997 WL 827794, *4 (S.D. Miss. 1997)("plaintiffs' lawsuit does not establish a basis for federal removal jurisdiction, notwithstanding [that] pre-emption under FIFRA may well arise with regard to the plaintiffs' claims"); *Murray v. Commonwealth Edison*, 905 F. Supp. 512, 514 (N.D. Ill. 1995)("federal pre-emption of state law claims does not ordinarily turn them into federal claims" in the absence of an express grant of federal question jurisdiction in the statute); *Rodriguez v. Shell Oil Co.*, 818 F. Supp. 1013, 1015 (S.D. Tex. 1993)("it is abundantly clear that in enacting FIFRA, Congress did not intend to so completely pre-empt the field as to allow the removal from state court of FIFRA-pre-empted claims").

Moreover, "even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1548. Under ERISA, however, the Supreme Court determined that "Congress has clearly manifested an intent to make causes of action within the scope of [ERISA's] civil enforcement provisions ... removable to federal court." *Id*. The Court reached that conclusion based on the language of the jurisdictional subsection of ERISA's civil enforcement provisions, set out at 29 U.S.C. § 1132(f), which states: "The district courts of the United States shall have jurisdiction, without respect to

7

the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." *Id.*

FIFRA contains no similar jurisdictional directive. Thus, this court finds no evidence that Congress intended to permit removal of all state actions arguably within the scope of FIFRA. *See Rodriguez*, 818 F. Supp. at 1017 ("Outside of the express pre-emption provision, there is simply no legislative history to support the contrary contention [that removal is proper], and, in the Court's view, express pre-emption, without more, is insufficient to support removal").

Accordingly, this court finds that the complete pre-emption doctrine does not apply to this case, and no federal question jurisdiction exists.

**B.   Diversity Jurisdiction**

Alternatively, defendants assert federal jurisdiction under the diversity statute, which provides that a district court has original jurisdiction over all cases where the action is between citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a) & (a)(1).

**1.   diversity of citizenship**

Although the statute does not specify complete diversity of citizenship, it has long been the rule that diversity jurisdiction requires all plaintiffs to be diverse from all defendants.

8

*Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). It is conceded that Don Smith is not a diverse party. Smith resides in Lawrence County, Alabama, and thus shares Alabama citizenship with plaintiff. Instead, defendants contend that Smith has been fraudulently joined in order to prevent removal. (Defendants' Notice of Removal ¶ 8.) If this is so, then the court may disregard Smith's citizenship for purposes of determining jurisdiction. *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983).

Where a party alleges fraudulent joinder, that party bears the burden of proving the allegation by clear and convincing evidence. *Coker*, 709 F.2d at 1440; *Yawn v. Southern Railway Co.*, 591 F.2d 312, 316 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979).[7] Although the court properly looks to the complaint itself to determine whether there has been fraudulent joinder, the court may resort to additional submissions, such as deposition testimony and affidavits, when making its determination. *Coker*, 709 F.2d at 1440. All allegations and submissions must be viewed in the light most favorable to plaintiff, the party who chose the state forum and opposes removal. *Id.* Thus, if there is even a possibility that a state court would find that plaintiff's complaint states a valid claim against a resident defendant, the federal court must find that the joinder was proper and remand the

---

[7] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

case to the state court. *Id.* at 1440-1441.

Plaintiffs assert claims for misrepresentation against both defendants. To prove misrepresentation, plaintiffs must show: (1) a misrepresentation of material fact; (2) made willfully to deceive, recklessly, without knowledge, or mistakenly; (3) which was justifiably relied on by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. Alabama Code § 6-5-101 (1993); *Harrington v. Johnson-Rast & Hays Co.*, 577 So. 2d 437 (Ala. 1991). Alabama courts hold that both an agent and principal may be liable for misrepresentations made by the agent. *Guinn v. American Integrity Insurance Co.*, 568 So. 2d 760, 764 (Ala. 1990)("The salesperson and his principal may be liable for damages if he misrepresents material facts in an attempt to induce the prospective customer to enter into the contract"); *Williams v. Kasal*, 429 So. 2d 1008, 1010 (Ala. 1983)("it is clear under our prior cases that in some instances an agent may be liable for torts committed in the scope of his employment").

Plaintiff alleges, *inter alia*, that Smith told Hale the "Ammo" warranty had been extended to cover "Fury."[8] That allegation, standing alone, is sufficient to state a valid claim against Smith for misrepresentation. Smith's alleged representation was not, as defendants argue, an opinion that some event would occur in the future. Instead, it was a present statement of fact describing FMC's then-existing warranty obligations. *See Allstate Insurance*

---

[8] The court need not, and does not, address every alleged misrepresentation by Smith for purposes of deciding whether Smith's joinder was fraudulent.

10

*Co. v. Hilley*, 595 So. 2d 873, 876 (agent's statement that certain benefits would be paid for a valid claim was not a promise to act in the future; rather, it was a present statement of fact regarding the insurer's obligations). Thus, if true, plaintiff's allegations of misrepresentation suggest more than a possibility that a state court jury could find that she has stated a valid claim against Smith. Accordingly, joinder of Smith was proper, and complete diversity is lacking.

### 2. amount in controversy

Defendants also bear the burden of proving the requisite amount in controversy. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). Where, as here, plaintiff makes an unspecified demand for damages,[9] "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott*, 77 F.3d at 1357 (citing *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir. 1993)).

Defendants' showing on this point begins and ends with their notice of removal, which states: "The amount in controversy exceeds the sum of value of $75,000 exclusive of interest and costs." (Defendants' Notice of Removal ¶ 9.) Defendants present no other evidence to demonstrate that, if plaintiff recovers, more likely than not the judgment will exceed the jurisdictional amount.

---

[9] Plaintiff seeks only "compensatory damages for the costs of the products, Fury and Ammo, and for the loss of cotton profits, and punitive damages in an amount to be assessed by a duly empaneled jury, plus the costs of this action." (Complaint at 4-7.)

11

Accordingly, this case is due to be remanded. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

**DONE** this **3rd** day of March, 1998.

_____
United States District Judge

12